UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IN RE CHROMACODE LITIGATION | Case No.  23-cv-04823-EKL  (VKD)<br><br>**ORDER RE MARCH 25, 2026 DISCOVERY DISPUTE RE RULE 30(B)(6) DEPOSITION OF CALTECH**<br><br>Re: Dkt. No. 200 |

The parties ask the Court to resolve their dispute regarding the testimony of California Institute of Technology's ("Caltech") representative, Frederic Farina, in response to certain Rule 30(b)(6) deposition topics.  Dkt. No. 200.  Specifically, Bio-Rad Laboratories, Inc. ("Bio-Rad") seeks an order compelling Caltech to provide further deposition testimony on topics 1-2, 9-11, 24-25, and 33, on the ground that Mr. Farina was insufficiently prepared.  Caltech responds that its representative was prepared to, and did, answer questions within the scope of each topic.  The Court finds this dispute suitable for resolution without oral argument.  *See* Civil L.R. 7-1(b).

For purposes of this dispute, the parties have grouped the topics at issue into categories, and the Court follows the parties' organization.

### 1.    Topics 1, 2, 9, and 11: Caltech/ChromaCode license and other licenses

With respect to Caltech's licensing, Bio-Rad complains that Caltech's representative was not adequately prepared to provide testimony regarding topics 1, 2, 9, and 11:

1.  All revenues, fees, royalties, lump sums, license payments, and/or other compensation, You have received resulting from or relating to the ChromaCode Caltech License.

2. All evaluations of actual, prospective, and/or considered licenses in the field of nucleic acid detection, including but not limited to licenses including or relating to the rights of the alleged inventions of the Caltech Patents.

9. Facts and circumstances surrounding any and all efforts, attempts, and/or offers (formal or informal) made by or to Plaintiffs to sell, purchase, license, or otherwise transfer ownership of any rights in the Caltech Patents, including any sale, acquisition, security interest, lien against, security agreements, or transfer of any rights relating to the Caltech Patents or any Related Patents.

11. The licensing of the Caltech Patents or any Related Patents, including, but not limited to the ChromaCode Caltech License, and any license portfolio including the Caltech Patents or any Related Patents, including, without limitation, the negotiation history, license agreements, settlement agreements, covenants not to sue, and any memorandum of understanding covering the Caltech Patents, any Related Patent, the subject matter thereof, or any product, system or method involving PCR multiplexing, or any product, system or method that Plaintiffs contend embody any of the inventions disclosed or claimed in the Caltech Patents or Related Patents.

Dkt. No. 200 at 2-3; *id.*, Ex. A.  Bio-Rad argues that these topics, collectively, call for testimony regarding several matters about which Mr. Farina was not prepared to testify when questioned during the deposition, including specifically:

(1) How the parties to the Caltech/ChromaCode license arrived at the royalty rate and royalty structure reflected in that license agreement.

(2) Whether the exclusive nature of the Caltech/ChromaCode license impacted the royalty rate of that license agreement.

(3) Whether the patents licensed in the Caltech/ChromaCode license were individually valued.

(4) The history of the parties' negotiations of the terms of the Caltech/ChromaCode license, including the reasons behind a specific amendment.

(5) Whether Caltech had an understanding of the "substance" of the licensed technology at the time it entered into the Caltech/ChromaCode license.

(6) What considerations inform Caltech's decision to exclusively license patent rights.

(7) Whether Caltech entered into any other licenses related to nucleic acid detection.

*Id.* at 2-3.  Caltech responds that Mr. Farina, who currently heads Caltech's licensing department, is the most knowledgeable employee regarding topics 1, 2, 9, and 11, and that he answered all

2

questions reasonably within the scope of these topics. *Id.* at 5-7.

The Court has carefully reviewed the deposition transcript excerpts appended to the parties' discovery dispute letter. The Court agrees with Caltech that Mr. Farina provided responsive testimony regarding what considerations inform Caltech's decision to exclusively license patent rights and whether the exclusive nature of the Caltech/ChromaCode license impacted the royalty rate of that license agreement, even though those specific subjects are not clearly called for in topics 1, 2, 9, or 11. The Court also agrees with Caltech that Mr. Farina adequately responded to questions about the nature of Caltech's understanding of the technology at issue at the time it entered into the Caltech/ChromaCode license, even though those questions do not appear to fall within the scope of any of these topics.

As to the remaining questions, Mr. Farina did not provide responsive testimony regarding the negotiation history of the Caltech/ChromaCode license, which is within the scope of topic 11. Specifically, while Mr. Farina was able to describe Caltech's standard approach to licensing generally, *see* Dkt. No. 200, Ex. B (Tr. 43:17-45:1, 90:6-91:23, 118:1-16), he was not able to answer questions specifically about the negotiation of the Caltech/ChromaCode license, including: how the parties to the Caltech/ChromaCode license arrived at the royalty rate and royalty structure reflected in that license agreement; whether the patents licensed in the agreement were individually valued; and the history of the parties' negotiations of the terms of the agreement, including the reasons behind a specific amendment. According to Mr. Farina, two people participated in or were knowledgeable about the negotiation of the Caltech/ChromaCode license: (1) his predecessor, Larry Gilbert, and (2) a licensing associate who drafted the agreement, Jennifer Hodas. Dkt. No. 200, Ex. B (Tr. at 45:3-46:24). Mr. Gilbert is deceased, and Ms. Hodas is no longer employed by Caltech. *Id.* The question is whether Caltech was required to obtain information from Ms. Hodas, or engage in some other effort, in order to prepare its representative for deposition on topic 11.

Citing only *Hamilton v. RadioShack Corp.*, No. 11-cv-00888 LB, 2012 WL 787484, at *2 (N.D. Cal. Mar. 9, 2012), Caltech argues that "Rule 30(b)(6) does not impose an obligation on a witness to speak with former employees about topics for which he is already prepared." Dkt. No.

200 at 5.  The problem is that Mr. Farina was *not* prepared to testify about the negotiation history of Caltech/ChromaCode license.  As Judge Beeler observed in *Hamilton*:

> [C]ourts have grappled with defining the parameters of a corporation's duty to contact former employees to prepare a Rule 30(b)(6) witness. . . . A significant number of courts have observed that, *if a corporation no longer employs anyone knowledgeable about the subject matter*, it must prepare a representative to testify at the deposition and *this might require seeking the assistance of former employees.*

*Hamilton*, 2012 WL 787484, at *2 (citations omitted; emphasis added); *see also Allstate Indem. Co. v. Lindquist,* No. 20-cv-1508-JLR, 2022 WL 796314, at *5 (W.D. Wash. Mar. 16, 2022) ("Many courts have found that '[a]dequate preparation' for a Rule 30(b)(6) deposition requires 'contacting and interviewing former employees with relevant knowledge if they are reasonably available.'" (citing cases)).  As Mr. Farina was not personally knowledgeable about the negotiation history of the Caltech/ChromaCode license, Caltech "might" be required to seek Ms. Hodas's assistance in preparing for topic 11.

Caltech does not address the feasibility of seeking information from Ms. Hodas, and it appears that no effort was made to contact her or to obtain information about the license negotiation from any other source reasonably available to Caltech.  In these circumstances, the Court finds that Caltech did not adequately prepare its representative to testify regarding topic 11.

Finally, Mr. Farina also was not prepared to testify regarding whether Caltech had entered into any other licenses in the field of nucleic acid detection, which is within the scope of topic 2.  When asked this specific question, he answered merely that "nothing comes to mind," but he acknowledged that he had not checked.  *See* Dkt. No. 200, Ex. B (Tr. 239:14-23).  Rule 30(b)(6) requires more.  Thus, the Court finds that Caltech also did not adequately prepare its representative to testify regarding topic 2.

### 2.  Topic 33: investment in ChromaCode

Bio-Rad complains that Caltech's representative was not adequately prepared to provide testimony regarding topic 33: "Each decision to invest in, or not invest in, ChromaCode in rounds of financing and/or fundraising."  Dkt. No. 200 at 3-4; *id.*, Ex. A.  Caltech responds that Mr.

4

Farina was prepared to, and did, testify regarding when and why Caltech invested in ChromaCode. *Id.* at 7-8.

The Court has reviewed the deposition transcript excerpts the parties cite in support of their respective positions. The Court agrees with Caltech that Mr. Farina provided some responsive testimony regarding Caltech's reasons for investing in ChromaCode, *see, e.g.,* Dkt. No. 200, Ex. B (Tr. 155:2-158:2), but more importantly, it is not at all clear how further deposition testimony on this topic is relevant to any issue in the case. Accordingly, the Court denies Bio-Rad's request for further deposition on topic 33.

### 3. Topics 24 and 25: market share for practicing products

Bio-Rad complains that Caltech's representative was not adequately prepared to provide testimony regarding topics 24 and 25:

24. Any analysis or estimation of actual and future market share and sales of the Accused ChromaCode Products.

25. Any analysis or estimation of actual and future market share and sales of Your products You allege embody the Caltech Patents.

Dkt. No. 200 at 4; *id.*, Ex. A. Bio-Rad suggests that because Caltech received quarterly updates from ChromaCode, its licensee, regarding royalty payments and participating in meetings with the company, Caltech must have information responsive to these topics. *See id.* at 4. Caltech responds that it does not manufacture or sell any products and that the information Bio-Rad seeks is outside the scope of its knowledge. *Id.* at 8.

Bio-Rad correctly observes that Mr. Farina testified he did no investigation to prepare to respond to questions within the scope of topics 24 and 25. However, it is not clear why Bio-Rad wishes to obtain this information from Caltech, rather than ChromaCode, as Caltech's knowledge of actual and future market share of ChromaCode's accused products apparently comes from ChromaCode. Thus, while Caltech did not prepare Mr. Farina to testify regarding these topics, Bio-Rad does not explain why it requires this information from Caltech in the first instance. Accordingly, the Court denies Bio-Rad's request for further deposition on topics 24 and 25.

United States District Court
Northern District of California

5

### 4. Topic 10: ownership and chain of title

Bio-Rad complains that Caltech's representative was not adequately prepared to provide testimony regarding topic 10: "The chain of ownership of the Caltech Patents, including any assignment, and any past or present ownership interest or financial interest in the Caltech Patents." Dkt. No. 200 at 4-5; *id.*, Ex. A. In particular, Bio-Rad argues that Mr. Farina was not prepared to testify about "ownership issues" regarding the Caltech patents at issue, including whether USC has an ownership interest in the patents. *Id.* at 4. Bio-Rad also complains that it did not have an opportunity to examine Mr. Farina about "documents that concern a potentially related arrangement and payments between Caltech and USC" because those documents were produced after the deposition concluded. *Id.* at 5.

Caltech responds that Mr. Farina was prepared to, and did, testify regarding the ownership of the patents, inventor Kartalov's assignment of his rights, and Caltech's discussion of the issue with USC. *Id.* at 8-9. Caltech further observes that the Caltech employee who interfaced directly with USC on this point is now deceased. *Id.* at 9. Finally, Caltech notes that Bio-Rad did not confer regarding the post-deposition documents and that, in any event, another witness has already testified about those documents. *Id.* Bio-Rad does not address Caltech's arguments regarding these documents.

The Court has reviewed the deposition transcript excerpts the parties cite in support of their respective positions and agrees with Caltech that Mr. Farina was prepared to respond to questions within the scope of topic 10. That topic does not specifically call out any issues with respect to USC's interests or conflicting claims of ownership by USC, so it is not apparent that Caltech should have known to prepare its representative on those particular details. Accordingly, the Court denies Bio-Rad's request for further deposition on topic 10.

\*\*\*

Caltech must prepare a corporate representative to provide further deposition testimony regarding: (1) the negotiation history of the Caltech/ChromaCode license, within the scope of topic 11, and (2) whether Caltech had entered into any other licenses in the field of nucleic acid detection, within the scope of topic 2. The further deposition must not exceed two hours and must

6

occur within the next 30 days, unless the parties agree otherwise.

**IT IS SO ORDERED.**

Dated: April 8, 2026

Virginia K. DeMarchi
United States Magistrate Judge

United States District Court
Northern District of California

7