UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CHROMACODE, INC., <br><br> Plaintiff, <br><br> v. <br><br> BIO-RAD LABORATORIES, INC., <br><br> Defendant. | Case No.  5:23-cv-04823-EKL <br><br> **ORDER GRANTING-IN-PART AND DENYING-IN-PART CHROMACODE'S MOTION FOR SUMMARY JUDGMENT** <br><br> Re:  ECF No. 194 |

Plaintiff/Counter-Defendant ChromaCode, Inc. ("ChromaCode") moves for summary judgment of non-infringement as to U.S. Patent Nos. 9,222,128 and 9,921,154 (the "'128 Patent" and "'154 Patent," respectively, and together the "Bio-Rad Patents").  Mot., ECF No. 194; Reply, ECF No. 220.  Defendant/Counter-Plaintiff Bio-Rad Laboratories, Inc. ("Bio-Rad") opposes the motion.  Opp., ECF No. 204.  The Court heard oral argument on May 12, 2026.  *See* ECF No. 230.

For the reasons stated on the record at the hearing and set forth below, ChromaCode's motion for summary judgment is GRANTED-IN-PART and DENIED-IN-PART.

## I.   BACKGROUND

### A.  Procedural Background

On September 6, 2023, Bio-Rad sent ChromaCode a letter accusing ChromaCode's high-definition polymerase chain reaction assays ("HDPCR Assays") of infringing the Bio-Rad Patents. *See* Compl. Ex. C, ECF No. 1.  On September 20, 2023, ChromaCode filed the present action against Bio-Rad, seeking declaratory judgment of non-infringement as to the Bio-Rad Patents. Compl. ¶ 1.  On November 8, 2023, Bio-Rad counterclaimed for patent infringement, alleging that ChromaCode infringed the Bio-Rad Patents "by using ChromaCode's HDPCR Assays in the United States that embody or use the inventions claimed in the [Bio-Rad Patents]."  Countercls.

¶¶ 4, 9, ECF No. 27.

Bio-Rad served its infringement contentions—which remain operative in this dispute—on February 24, 2024. *See* Salen Decl. Ex. A, ECF No. 192-1 ("Infringement Contentions"). In its infringement contentions, Bio-Rad accuses "ChromaCode assays that are applications of the ChromaCode HDPCR method," *id.* at 1, including ChromaCode's assays for (1) non-small cell lung cancer ("NSCLC"), (2) SARS-CoV-2 ("COVID"), (3) Tick-Borne Pathogen Panel ("TBP"), (4) Multi-Drug Resistance ("MDR"), and (5) Respiratory Virus 6 ("RV6"). *See id.* at 2-4. Following a *Markman* hearing, the Court construed disputed claim terms on July 22, 2025. *See* Claim Construction Order, ECF No. 125.

**B. Factual Background**

Bio-Rad and ChromaCode develop technology used in genetic analysis and diagnostic tools. One such tool is polymerase chain reaction ("PCR"), in which analytes (*i.e.*, molecules of interest such as DNA sequences) are amplified (*i.e.*, replicated) and combined with probes designed to hybridize (*i.e.*, bind) to the analytes. The probes are equipped with fluorophores that emit light signals when excited, permitting detection and identification of the analytes present. The Bio-Rad Patents address problems that arise with multiplexing PCR assays (*i.e.*, attempting to detect multiple targets within samples) by using multiple colors of light, alone or in combination, to encode targets of interest.

The '128 Patent, titled "Multiplexed Digital Assays with Combinatorial Use of Signals," was filed on March 19, 2012. '128 Patent, ECF No. 51-1. Prior art methods for PCR multiplexing were inadequate for various reasons, including that the hardware required to detect multiple targets was complicated and expensive. *See id.* at col. 2 ll. 14-18. The '128 Patent addresses this problem by allowing targets to be detected by more than one color signal. *Id.* at fig. 8. The '128 Patent contains two independent claims (claims 1 and 12), which recite as follows:

> 1. A method of performing a multiplexed digital amplification assay, the method comprising:
> amplifying more than R targets in partitions;
> creating R signals representative of light detected in R different wavelength regimes from the partitions, where $R \geq 2$; and calculating an average level of each target in the partitions based on the R signals, wherein the level calculated accounts

2

for a coincidence of all possible combinations of the more than R targets in the same individual partitions;

wherein the more than R targets include three targets, and wherein the average levels of the three targets are calculated based on light detected from only two fluorophores associated with probes that bind to amplicons of the three targets during amplification

*Id.* at col. 31 ll. 19-34.

12. A method of performing a multiplexed digital amplification assay, the method comprising:

amplifying targets in partitions;

detecting light from the partitions;

and calculating levels of at least three of the targets based on light detected from only two fluorophores, wherein the levels calculated account for a coincidence of all possible combinations of the at least three targets in the same individual partitions

*Id.* at col. 32 ll. 24-32.

The '154 Patent, titled "Multiplexed Digital Assays," was filed on December 6, 2013, as a continuation-in-part of the '128 Patent. '154 Patent, ECF No. 51-2. The '154 Patent teaches multiplexing examples wherein two targets are detected in a sample using a single color signal. *Id.* at col. 4 ll. 51-56. The '154 Patent contains four independent claims (claims 1, 11, 18, 19), of which claim 1 is representative for the purpose of this motion:

1. A method of performing a multiplexed digital amplification assay, the method comprising:

forming partitions that collectively contain R targets;

amplifying the R targets in the partitions;

collecting data representing amplification of each of the R targets in the partitions, all of the data being collected in fewer than R optical channels; and

determining a respective level of each of the R targets from the data, wherein each level is specific for a single target of the R targets, and wherein the level determined for at least one of the R targets is based in part on a partition count for a partition population positive for two of the R targets;

wherein the step of determining is based on at least R+2 identified partition populations.

*Id.* at col. 25 ll. 33-46.

## II.    LEGAL STANDARD

Summary judgment is appropriate if the evidence and all reasonable inferences in the light most favorable to the nonmoving party "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*,

3

United States District Court
Northern District of California

477 U.S. 317, 322 (1986).  The moving party bears the burden of showing that there is no material factual dispute by "identifying for the court the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact."  *T.W. Elec. Serv. Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).  A fact is "material" if it "might affect the outcome of the suit under the governing law," and a dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable trier of fact to decide in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party.  *Celotex*, 477 U.S. at 325; *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).  Where the moving party does not have the burden of proof on an issue at trial, it "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial."  *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

Once the moving party meets its initial burden, the nonmoving party must set forth, by affidavit or as otherwise provided in Rule 56, "specific facts showing that there is a genuine issue for trial."  *Liberty Lobby*, 477 U.S. at 250 (internal quotation marks omitted).  In determining whether a genuine issue of material fact exists, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Id.* at 255.  For a court to find that a genuine dispute of material fact exists, "there must be enough doubt for a reasonable trier of fact to find for the [non-moving party]."  *Corales v. Bennett*, 567 F.3d 554, 562 (9th Cir. 2009).

In a case for patent infringement, the Court applies Federal Circuit law to issues unique to patent law.  *Nuance Commc'ns, Inc. v. Abbyy Software House*, 626 F.3d 1222, 1230 (Fed. Cir. 2010), *cert. denied,* 564 U.S. 1053 (2011).  On the other hand, the Court applies the law of the regional circuit to substantive issues that are not unique to patent law or procedural issues.  *See, e.g.*, *Chrysler Motors Corp. v. Auto Body Panels of Ohio, Inc.*, 908 F.2d 951, 952-53 (Fed. Cir. 1990).  A patentee must prove infringement by a preponderance of the evidence.  *Bayer AG v.*

4

*Elan Pharm. Research Corp.,* 212 F.3d 1241, 1247 (Fed. Cir. 2000). To determine infringement, the Court compares the asserted claims to the accused products. *Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 976 (Fed. Cir. 1995). To establish literal infringement, the patentee must show the accused products practice every claim limitation of the asserted claims. *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.,* 520 U.S. 17, 29, 40 (1997).

Where the moving party seeks summary judgment of noninfringement, the party must support its motion with evidence of noninfringement. *Exigent Tech., Inc. v. Atrana Sols., Inc.,* 442 F.3d 1301, 1308-09 (Fed. Cir. 2006) (explaining that moving party must "stat[e] that the patentee had no evidence of infringement and point[] to the specific ways in which accused systems did not meet the claim limitations"). Because the ultimate burden of proving infringement rests with the patentee, an accused infringer may show that summary judgment of noninfringement is proper either by producing evidence that would preclude a finding of infringement, or by showing that the evidence on file fails to create a material factual dispute as to any essential element of the patentee's case. *See Novartis Corp. v. Ben Venue Laby's, Inc.,* 271 F.3d 1043, 1046 (Fed. Cir. 2001). "Summary judgment of noninfringement may only be granted if, after viewing the alleged facts in the light most favorable to the nonmovant and drawing all justifiable inferences in the nonmovant's favor, there is no genuine issue whether the accused device is encompassed by the patent claims." *Id.*

## III.   DISCUSSION

The Court expressed its concern during the May 12, 2026, hearing that the parties' oral arguments diverged widely from the arguments made in the briefing. This was caused by the fact that ChromaCode based its early motion for summary judgment primarily on purported deficiencies in Bio-Rad's infringement contentions rather than any purported absence of triable issue of fact as to infringement. This problem was only exacerbated by Bio-Rad's seeming gamesmanship, with Bio-Rad waiting until after ChromaCode filed its motion for summary judgment to concede that it no longer accuses four of the five ChromaCode assays originally set forth in Bio-Rad's infringement contentions. As explained *infra*, the Court concludes based on this concession that ChromaCode is entitled to summary judgment of non-infringement as to the

COVID, TBP, MDR, and RV6 assays. Because ChromaCode has failed to demonstrate an absence of genuine dispute of material fact, ChromaCode is not entitled to summary judgment of non-infringement as to the NSCLC assay.

**A. ChromaCode is Entitled to Summary Judgment as to Accused Products that Bio-Rad Concedes Do Not Infringe**

ChromaCode's primary argument appears to be based on purported deficiencies in Bio-Rad's infringement contentions. *See* Mot. at 10-15. First, ChromaCode argues that Bio-Rad's infringement contentions are directed to a non-existent product, *see id.* at 11, attaching a declaration by ChromaCode's CEO Paul Flook stating that "Bio-Rad lumps all of ChromaCode's assays into a single fictional accused product called the 'HDPCR method.'" Flook Decl. ¶ 36. ECF No. 193. Second, ChromaCode argues that, to the extent that Bio-Rad's infringement contentions do accuse a real product, they are directed to "five different ChromaCode assays" without "map[ping] the features of even one of those assays to each limitation of any asserted claim." Mot. at 15.

To the extent that ChromaCode argues that deficiencies in Bio-Rad's infringement contentions entitle it to summary judgment, it is mistaken. Courts in this district have consistently explained that "[w]hile the [Patent Local] Rules are . . . intended to hasten resolution on the merits, they are *not*[] . . . a mechanism for resolving the merits of the parties' dispute." *FusionArc, Inc. v. Solidus Networks, Inc.*, No. 06-cv-06760-RMW-RS, 2007 WL 1052900, at *2 (N.D. Cal. Apr. 5, 2007); *see also Asia Vital Components Co. v. Asetek Danmark A/S*, 377 F. Supp. 3d 990, 1015 (N.D. Cal. 2019) ("[There is] no authority providing that the insufficiencies of contentions under the Patent Local Rules are a basis for granting summary judgment."); *Huawei Techs., Co v. Samsung Elecs. Co.*, 340 F. Supp. 3d 934, 958 (N.D. Cal. 2018) (explaining that "inadequacy of [patentee's] disclosures in its infringement contentions[] . . . alone does not justify granting [accused infringer's] motion for summary judgment").

That said, in opposing ChromaCode's motion for summary judgment, Bio-Rad concedes—apparently for the first time—that "there is no[] infringement based on" ChromaCode's COVID, TBP, MVR, and RV6 assays. Opp. at 3 n.2. ChromaCode's motion for summary judgment of

United States District Court
Northern District of California

non-infringement is accordingly GRANTED as to its COVID assay, TBP assay, MDR assay, and RV6 assay.

**B. Genuine Disputes of Material Fact Preclude Summary Judgment as to the Accused NSCLC Assay**

Turning to ChromaCode's secondary argument (*i.e.*, infringement on the merits), the sole issue remaining before the Court is whether ChromaCode is entitled to summary judgment of non-infringement as to the accused NSCLC assay. On this score, ChromaCode's briefing in its motion for summary judgment is thin, dedicating less than a page to its argument that it cannot be liable for infringement based on the NSCLC assay because (1) the NSCLC assay is not on sale and (2) the "NSCLC [instructions for use] . . . make clear that the assay does not perform the required 'average level in partitions' calculation." Mot. at 17.

ChromaCode's first ground for noninfringement of the NSCLC assay—hinted at in its opening brief but only set forth in any detail on reply—is that it "never sold an NSCLC assay, never generated revenue from the NSCLC assay, is not offering the NSCLC assay for sale, and has no plans to offer the NSCLC test for sale in the future" but "rather, . . . only *developed* a final, manufacturable assay." Reply at 2 (emphasis added); *see also* Flook Decl. ¶¶ 12, 52. As a preliminary matter, this argument rests on an uncertain premise. To the extent that ChromaCode means that Bio-Rad cannot prove damages, *see* Mot. at 16 ("[T]he NSCLC assay . . . generated no damages."), Bio-Rad also seeks injunctive relief. In addition, the Federal Circuit has made clear that "a finding of infringement can rest on as little as one instance of the claimed method being performed during the pertinent time period." *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1317 (Fed. Cir. 2009). Bio-Rad identifies testimony from ChromaCode's co-founder Dr. Aditya Rajagopal and current Chief Technology Officer Dr. Jerrod Schwartz stating that ChromaCode has run the NSCLC assay on several occasions and presented its NSCLC data in multiple publications and scientific meetings. *See* Opp. Ex. 3 at 314:22-316:1, ECF No. 204-6; Opp. Ex. 4 at 19:4-15, 20:1-21:12, ECF No. 204-5. At the very least, the extent of allegedly infringing uses of the NSCLC assay is disputed.

In connection with its second ground for non-infringement, the only claim limitation

United States District Court
Northern District of California

ChromaCode disputes with regard to the NSCLC assay is the requirement that the assay calculate an average level of each target in the partitions based on the R signals. *See* Flook Decl. ¶ 29. ChromaCode also attaches to its motion (1) the parties' exchanges during discovery, *see* Salen Decl., ECF No. 192; (2) Mr. Flook's bare assertion that "[t]he NSCLC assay does not calculate an average level of each target in the partitions based on the R signals," Flook Decl. ¶ 29; (3) the NSCLC assay's instructions for use, *see id.* Ex. 15, ECF No. 193-5; and (4) various conference posters and white papers referencing the NSCLC's experimental results, *see id.* Exs. 16-26, ECF Nos. 193-6–193-16.  In opposing summary judgment, Bio-Rad attaches a declaration by its expert Dr. Gregory Cooper stating that the NSCLC assay practices each claim limitation of claims 1 and 12 of the '128 Patent and claims 1 and 11 of the '154 Patent, as well as the materials relied upon by Dr. Cooper.  Cooper Decl. ¶¶ 42-154, ECF No. 204-2; *see also* Opp. Exs. 1-13, ECF Nos. 204-4–204-13.

As Bio-Rad correctly points out, it is doubtful whether Mr. Flook's conclusory assertion even discharges ChromaCode's initial burden to identify the absence of a triable issue of fact. *Cf. James v. Home Depot, U.S.A., Inc.*, No. 09-cv-06035-ODW, 2010 WL 11596186, at *3 (C.D. Cal. Nov. 8, 2010) ("While a bare conclusory assertion will never suffice to withstand a motion for summary judgment, the same cannot support one.").  Even accepting Mr. Flook's assertion, however, the Court finds that Dr. Cooper's declaration at minimum shows that there is a genuine dispute of material fact as to whether the NSCLC assay practices this limitation, as he states that "the NSCLC assay calculates (or estimates) an average level, specifically a concentration, of each target in the partition based on the R signals (*i.e.*, the fluorescence data collective in the four optical channels)," including by measuring the mutant allege frequency by "determining the average frequency at which a target appears in the tested partitions as a result of the detected signals."  Cooper Decl. ¶¶ 66-70.

ChromaCode's argument on reply that the Court should discount Dr. Cooper's declaration because he relies on "different prototype tests," which ChromaCode's witnesses have stated "do not accurately describe the calculations the actual NSCLC assay performs," is not persuasive. Reply at 5-6 (emphasis omitted).  It is wholly unclear to the Court at this stage which calculations

ChromaCode alleges to be performed by the "prototype" NSCLC assay and which calculations ChromaCode alleges to be performed by the "actual" assays.  In any case, Dr. Cooper's declaration does not solely rely on the white paper asserted by ChromaCode to describe this prototype.  *Cf.* Cooper Decl. ¶ 71.  On this record, the Court cannot conclude that ChromaCode has shown the absence of a genuine dispute of material fact as to whether the accused NSCLC assay practices the calculation limitation.

Because there exists a triable issue of fact as to whether the NSCLC assay calculates an average level across partitions as recited by the asserted claim limitations, ChromaCode is not entitled to summary judgment of non-infringement as to the NSCLC assay.  The Court accordingly DENIES ChromaCode's motion for summary judgment as to the NSCLC assay.

## IV.   ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that:

(1) ChromaCode's motion for summary judgment is GRANTED as to the COVID assay, MDR assay, TBP assay, and RV6 assay.  ChromaCode's motion for summary judgment is DENIED as to the NSCLC assay.

(2) This Order terminates ECF Nos. 191, 194.

Dated:  May 27, 2026

_____
Eumi K. Lee
United States District Judge

United States District Court
Northern District of California

9