United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

IN RE CHROMACODE LITIGATION

Case No. 23-cv-04823-EKL (VKD)

**ORDER RE MOTION TO STRIKE BUMMER EXPERT REPORT RE DAMAGES**

Re: Dkt. No. 235

Plaintiff and counter-defendant ChromaCode, Inc. ("ChromaCode") moves to strike the expert report of Raymond Bummer on the ground that defendant and counter-claimant Bio-Rad Laboratories, Inc. ("Bio-Rad") failed to timely disclose the damages theory about which Mr. Bummer proposes to testify. Dkt. No. 235. Bio-Rad opposes the motion. Dkt. No. 244. The Court heard oral argument on the motion on July 21, 2026. Dkt. Nos. 262, 269 (transcript).

For the reasons explained below, the Court denies the motion to strike.[1]

## I. BACKGROUND

In this consolidated action, Bio-Rad asserts that ChromaCode infringes U.S. Patent No. 9,222,128 ("the '128 patent") and U.S. Patent No. 9,921,154 ("the '154 patent"). *See* Dkt. No. 27, counterclaims ¶¶ 9, 10.

On March 29, 2024, Bio-Rad served its damages contentions, pursuant to Patent Local Rule 3-8. Dkt. No. 235 at 6; Dkt. No. 235-2. In these contentions, Bio-Rad stated, in part: "In view of [ChromaCode's] ongoing infringement, including internal development work, sales,

[1] The Court will separately address the pending motions to seal. The Court finds no basis to seal anything discussed in this order, apart from the portions redacted herein.

United States District Court
Northern District of California

licensing, and distribution of the Accused Instrumentalities, Bio-Rad intends to pursue all damages proximately caused by ChromaCode's infringing activities based on at least reasonable royalty and lost profits models." Dkt. No. 235-2 at 2. The contentions included separate sections describing Bio-Rad's reasonable royalty and lost profits damages. *See id.* at 2-7. With respect to reasonable royalty damages, Bio-Rad's contentions included a subsection discussing the *Georgia-Pacific* factors bearing on a determination of "the appropriate royalty rates" and a separate subsection discussing the "royalty base." *Id.* at 2-5. Bio-Rad asserted that ChromaCode had made over $81 million in sales of accused products on which it sought a 15% royalty. *Id.* at 5. In addition, Bio-Rad asserted that it sought royalty damages for ChromaCode's "internal uses of [the accused technology] for research and development." *Id.*

On May 9, 2024, ChromaCode served its responsive damages contentions, pursuant to Patent Local Rule 3-9. Dkt. No. 244-2. The parties held a meeting regarding damages contentions, as required by Patent Local Rule 3-10, on September 30, 2024. *See* Dkt. No. 84.

During the course of discovery, ChromaCode disclosed information showing that none of the five accused ChromaCode products had ever been sold commercially and none had generated any revenue. *See* Dkt. No. 235 at 6; Dkt. No. 244 at 6. On March 26, 2026, Bio-Rad conceded that four of the five products it had originally accused did not infringe the '128 patent or the '154 patent, leaving only one product, the NSCLC assay, in play. *See* Dkt. No. 204 at 3 n.2.[2]

Bio-Rad did not amend its damages contentions in response to these developments. However, on March 31, 2026, the last day of fact discovery, Bio-Rad amended its responses to ChromaCode's Interrogatories Nos. 3 and 12 (requesting information about Bio-Rad's damages contentions and the remedies it seeks) to include the following information:

> Bio-Rad has made a statement of its contentions for damages in this case. Bio-Rad wholly incorporates herein its Patent L. R. 3-8 damages contentions served on March 29, 2024, wherein Bio-Rad identified that it seeks lost profits and reasonable royalty damages. The exact calculations of such damages will be determined by appropriate expert testimony, which is premature at this time, and

[2] The presiding judge has since granted summary judgment of non-infringement in favor of ChromaCode as to all accused products except for the NSCLC assay. Dkt. No. 232 at 9.

United States District Court
Northern District of California

> progression of Bio-Rad's ongoing investigation, including through discovery.
>
> With respect to damages for ChromaCode's internal uses of Bio-Rad's patented digital PCR multiplexing technology, including for research and development, Bio-Rad contends that it is entitled to, at minimum, reasonable royalties for that use, which Bio-Rad [sic] may take the form of a lump sum, as confirmed by Mr. Fred Farina. *See* Farina Tr. at 73:11-74:19. Moreover, ChromaCode would have paid a substantial amount for such a license given the amount of investment and alleged commercial value of its NSCLC assay. As Dr. Rajagopal explained, ChromaCode invested roughly $[redacted] to develop the product and viewed it as an asset with $[redacted] in commercial value. *See* Rajagopal Tr. at 317:18-23, 318:8-19; Flook Tr. at 41:21-42:8.
>
> Furthermore, ChromaCode witnesses have confirmed the extent of use of ChromaCode's NSCLC assay. Dr. Rajagopal and Dr. Schwartz, for instance, confirmed that ChromaCode ran this assay on the order of a thousand times or more. *See* Rajagopal Tr. at 315:16-24; Schwartz Tr. at 27:23-28:9. ChromaCode scientist Jerrod Schwartz likewise confirmed the number of instances where the assay was run for several publications. Schwartz Tr. at 28:16-29:15. As Dr. Schwartz confirmed, ChromaCode ultimately ran these assays for commercial purposes. *See id.* at 21:18- 22:4. All of these considerations weigh in favor of a high royalty.

Dkt. No. 244-4 at 6-7 (Interrogatory No. 3); *see also id.* at 20 (Interrogatory No. 12).

On April 30, 2026, Bio-Rad served an expert report for its damages expert, Raymond Bummer, pursuant to Rule 26(a)(2) of the Federal Rules of Civil Procedure. Dkt. No. 235-1 ¶ 5; Dkt. No. 235-3. The expert report discloses that Mr. Bummer intends to testify that royalty damages for ChromaCode's alleged infringing uses of the accused NSCLC assay should be calculated based on a hypothetical negotiation resulting in a one-time lump sum payment by ChromaCode to Bio-Rad in the amount of $2 million. Dkt. No. 235 at 2; Dkt. No. 235-3 ¶ 130.

On May 29, 2026, ChromaCode filed its motion to strike Mr. Bummer's expert report on the ground that Bio-Rad failed to timely and sufficiently disclose its lump sum royalty damages theory in its damages contentions.

## II. LEGAL STANDARD

As amended effective October 19, 2023, Patent Local Rule 3-8 provides:

> Not later than 50 days after service of the Invalidity Contentions, each party asserting infringement shall identify each of the category(-ies) of damages it is seeking for the asserted infringement (e.g., lost profits, reasonable royalty, price erosion, convoyed sales, etc.), and for each category of damages sought, provide a good faith explanation of the theory of damages and the factual basis for damages. By way of example only, if a party is seeking price erosion, it should state the period during which the price erosion occurred and the quantum of price erosion. For convoyed sales, the party should identify the convoyed sales and explain why they qualify as convoyed sales. For reasonable royalty damages, a party should explain the extent to which it is seeking cost-savings or cost-avoidance royalties, profit split royalties, comparable license royalties or any other basis for royalties.
>
> A party may not amend, without leave, its identification of the categories of damages it is seeking.

Patent L.R. 3-8. The Rule distinguishes between "categories" of damages and "theories" of damages. It provides that a party may not amend, without leave of court, its identification of the *categories* of damages it seeks, but it neither prohibits nor requires amendment of the party's "good faith" explanation of its damages *theories* and their factual bases, with or without leave of court.

Rule 37(c) provides that a party that "fails to provide information . . . as required by Rule 26(a) or (e)" may not "use that information . . . to supply evidence . . . at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1); *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001). In determining whether a violation of the disclosure or discovery rules is harmless, the court may consider "'(1) prejudice or surprise to the party against whom the evidence is offered; (2) the ability of that party to cure the prejudice; (3) the likelihood of disruption of the trial; and (4) bad faith or willfulness involved in not timely disclosing the evidence.'" *Gryglak v. HSBC Bank USA, N.A.*, No. 22-15630, 2023 WL 3243998, at *2 (9th Cir. May 4, 2023) (quoting *Lanard Toys, Ltd. v. Novelty, Inc.*, 375 F. App'x 705, 713 (9th Cir. 2010)).

**III. DISCUSSION**

ChromaCode moves to strike Mr. Bummer's expert report pursuant to Rule 37(c)(1) on the

ground that Bio-Rad failed to timely disclose its lump sum royalty damages theory, the lump sum royalty amount, or the detailed bases for such royalty in its Patent Local Rule 3-8 disclosures. Dkt. No. 235 at 1, 3. Bio-Rad responds that it fully complied with Patent Local Rule 3-8 and timely disclosed additional information regarding its royalty damages theory in response to ChromaCode's interrogatories before the close of fact discovery, after obtaining relevant deposition testimony from ChromaCode and Caltech witnesses. Dkt. No. 244 at 6. Bio-Rad argues there is no justification for striking Mr. Bummer's expert report simply because that disclosure provides details, analysis, and explanation that goes beyond Bio-Rad's damages contentions and interrogatory responses. *Id.* at 12-14.

This motion requires the Court to address the following question: If a party does not amend its Patent Local Rule 3-8 damages contentions to reflect changes to its damages theories, is the party foreclosed from presenting expert testimony regarding such theories at trial under Rule 37(c)(1)? For the reasons explained below, the Court concludes the answer is "no."

**A. Bio-Rad's Patent Local Rule 3-8 Damages Contentions**

ChromaCode's motion assumes that a party has a duty to amend or supplement its damages contentions when its damages theories change in some material respect, just as it would have a duty to amend or supplement its infringement or invalidity contentions. *See* Dkt. No. 235 at 4 (citing Fed. R. 26(e)(1)(A); *MasterObjects, Inc. v. Meta Platforms, Inc.*, No. 21-cv-05428 WHA, 2022 WL 4856269 (N.D. Cal. Oct. 3, 2022); *Netfuel, Inc. v. Cisco Sys. Inc.*, No. 18-cv-02352-EJD, 2020 WL 4381768 (N.D. Cal. July 31, 2020); *Looksmart Grp., Inc. v. Microsoft Corp.*, 386 F. Supp. 3d 1222 (N.D. Cal. 2019)); *see also id.* at 12. While this assumption may have been correct with respect to the damages contentions required by the prior version of Patent Local Rule 3-8, as several decisions in this District have held, it is not a correct assumption with respect to the current version of the Rule.

As Judge Tigar has explained, prior to January 2017, this District's Patent Local Rules did not require the exchange of damages contentions. *Looksmart*, 386 F. Supp. 3d at 1227 n.2. On January 17, 2017, the District adopted Patent Local Rules 3-8 and 3-9, which required the parties to exchange damages contentions after exchanging infringement and invalidity contentions.

Patent Local Rule 3-8 required a party to identify each category of damages the party seeks for infringement (such as, "lost profits" or "reasonable royalty"), each theory of recovery, the factual support for each theory, and a computation of damages within each category. *See id.* at 1227 (quoting Patent L.R. 3-8(a) (eff. Jan. 17, 2017)). Moreover, the 2017 version of Rule 3-8 required a party to "identify the information it requires" to the extent a party is "unable to provide a fulsome response to the disclosures required by this rule." *Id.* (quoting Patent L.R. 3-8(b) (eff. Jan. 17, 2017)). Similarly, Patent Local Rule 3-9 required a party denying infringement to provide responsive contentions that identify specifically how and why it disagrees with its adversary's damages contentions and the party's affirmative positions on each issue. *Id.* (quoting Patent L.R. 3-9 (eff. Jan. 17, 2017)). That Rule also required a party to "identify the information it requires" to the extent a party is "unable to provide a fulsome response to the disclosures required by this rule." *Id.* The nature of these requirements caused many judges in this District to conclude that a party has a duty to amend or supplement its damages contentions when its damages theory shifts in some material respect, and that a damages expert report that diverges from a party's contentions may be stricken. *See, e.g., MasterObjects,* 2022 WL 4856269, at *4; *Netfuel,* 2020 WL 4381768, at *3; *Looksmart*, 386 F. Supp. 3d at 1231.

This District made significant changes to Patent Local Rules 3-8 and 3-9 on October 19, 2023. While the timing of the disclosures did not change, Patent Local Rule 3-8, as amended, requires a party to disclose the categories of damages it seeks (such as, lost profits or reasonable royalty), as well as a "good faith" explanation of its damages theories and the factual bases for those theories. Patent L.R. 3-8 (eff. Oct. 19, 2023). The Rule no longer requires a computation of damages, nor does it require a party to identify the information necessary to provide a "fulsome response" regarding a party's damages theories or the factual bases for those theories. *See* Dkt. No. 244-5 at 4 (redline). The Rule includes new language specifying that a party must obtain leave to amend its contentions regarding the categories of damages it is seeking. *Id.* Similarly, Patent Local Rule 3-9, as amended, requires only that the party denying infringement "disclose in good faith material facts of which it is aware that are relevant to a category of damages disclosed under Rule 3-8." *Id.* The amended Rule also eliminates the requirement that a party identify the

information necessary to provide a "fulsome response" to its adversary's damages contentions. *Id.*[3] Together with amendments to Patent Local Rules 3-8 and 3-9, the District also adopted new Patent Local Rule 3-10, which requires the parties to "meet, with or without counsel of record, and . . . disclose their good faith estimate of damages, assuming infringement and validity." Patent L.R. 3-10 (eff. Oct. 19, 2023). New Rule 3-10 specifically provides that "[n]othing said or written during or in the course of the meeting, or for the purpose of the meeting, can be received in evidence, compelled in discovery, or compelled as testimony in any proceeding." *Id.*

As the language of current Patent Local Rules 3-8, 3-9, and 3-10 reflects, damages contentions do not serve the same purpose as the infringement and invalidity contentions required by Patent Local Rules 3-1 and 3-3. The detailed, claim- and instrumentality-specific disclosures required for infringement and invalidity contentions are intended to force litigants to "crystallize [their] theories of the case early in the litigation and to adhere to those theories once disclosed." *Bender v. Advanced Micro Devices, Inc.*, No. 09-cv-1149-MMC (EMC), 2010 WL 363341, at *1 (N.D. Cal. Feb. 1, 2010); *see also AbCellera Biologics Inc. v. Bruker Cellular Analysis, Inc.*, No. 20-cv-08624-JST (VKD), 2024 WL 1182929, at *1 (N.D. Cal. Mar. 18, 2024) (discussing requirements for Patent L.R. 3-1). Conversely, current Rule 3-8 makes clear that while a party must identify its damages categories with certainty up front (unless leave to amend is obtained later), the other aspects of its disclosure must meet a "good faith" standard. The same "good faith" standard applies to an accused infringer's responsive damages disclosures under current Rule 3-9. And, importantly, the culmination of the parties' exchange is a "damages contentions meeting," pursuant to new Rule 3-10, during which the parties are expected to have an off-the-record and candid discussion of what the case is worth. In short, unlike infringement and invalidity contentions, the purpose of damages contentions is not to require the parties to "crystallize" the details of their respective damages positions, but rather to provide a means for the parties to develop some understanding, relatively early in the case, of how the case might be valued, which in turn allows them to better assess prospects for a negotiated resolution.

[3] Patent Local Rule 3-6 (Amendment to Contentions) does not apply to damages contentions. *See* Patent L.R. 3-6.

United States District Court
Northern District of California

Thus, the Court disagrees with ChromaCode's premise that Bio-Rad may not rely on an expert report that discloses a lump sum theory of royalty damages unless its Rule 3-8 contentions previously disclosed that lump sum theory, the detailed bases for the lump sum theory, and a calculation of the lump sum royalty amount. *See* Dkt. No. 235 at 3-5, 17. As noted above, Rule 3-8 distinguishes between "categories" of damages and "theories" of damages. While a party may not amend, without leave of court, its identification of the *categories* of damages it seeks, no such constraint or requirement applies to a party's damages *theories* or the factual bases for those theories. And Rule 3-8 does not require *any* disclosure of a party's computation of damages. The Court is not persuaded that the "good faith" explanation required by current Rule 3-8 is the kind of "Rule-ordered contention[] [that] replace[s] 'traditional discovery mechanisms such as contention interrogatories,'" such that Rule 26(e) should be deemed to impose a duty to amend that explanation. *See Looksmart*, 386 F. Supp. 3d at 1227 (quoting *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1365 (Fed. Cir. 2006)); *see Valeo Schalter und Sensoren GmbH v. NVIDIA Corp.*, No. 23-cv-05721-EKL (VKD), 2024 WL 3916101, at *1 (N.D. Cal. Aug. 23, 2024) (observing that the trigger for supplementation under Rule 26(e) is when a party learns that its prior disclosure or response is "incomplete" or "inaccurate" "in some material respect") (quoting Fed. R. Civ. P. 26(e)(1)). ChromaCode cites no contrary authority; all of the cases on which it relies interpret the 2017 version of Patent Local Rule 3-8. *See* Dkt. No. 235 at 3-5.

Because Bio-Rad's damages contentions disclose that it seeks a reasonable royalty for ChromaCode's internal research and development use of the accused product—i.e., Bio-Rad's contentions disclose the *category* of damages on which its expert presently relies—Bio-Rad has complied with the part of its damages contentions that must be disclosed with certainty. ChromaCode is correct that Mr. Bummer's expert report discloses a lump sum royalty theory that is not disclosed in Bio-Rad's damages contentions,[4] but omission of that theory from Bio-Rad's

[4] Bio-Rad argues that it ought to have been clear to ChromaCode from the nature of the accused use—i.e., internal research and development—that the royalty rate theory for this accused use would be something other than a running royalty on sales. *See* Dkt. No. 244 at 5, 10, 14; Dkt. No. 269 at 35:20-36:10, 37:16-18. Maybe so. But it is undisputed that Bio-Rad's damages contentions do not disclose a lump sum royalty theory.

damages contentions does not "violate" the requirements of Patent Local Rule 3-8, and, as already discussed, is not within the scope of the duty to amend imposed by Rule 26(e). In these circumstances, the Court concludes that Rule 37(c)(1) does not provide authority for the exclusionary sanction ChromaCode seeks.

**B. Bio-Rad's Interrogatory Responses**

ChromaCode's motion to strike focuses specifically on Bio-Rad's damages contentions, and the purported duty to amend those contentions under Rule 26(e)—an argument this order rejects. However, in opposing ChromaCode's motion, Bio-Rad argues that it adequately disclosed its lump sum royalty theory in discovery—specifically, in response to ChromaCode's Interrogatories Nos. 3 and 12—as well as in its Rule 3-8 damages contentions. *See* Dkt. No. 244 at 2, 6; Dkt. No. 244-4. In reply, ChromaCode argues, in part, that Bio-Rad did not timely disclose its lump sum royalty theory in response to these interrogatories either, and ChromaCode seems to suggest that this serves as an independent basis for excluding Mr. Bummer's report. *See* Dkt. No. 249 at 2, 4-5.

The Court is reluctant to entertain an argument for striking Mr. Bummer's expert report raised for the first time by ChromaCode in its reply. However, because ChromaCode appears to assert this argument in the alternative in response to an argument Bio-Rad raised in its opposition, and because the parties had an opportunity to address this alternative argument during the hearing, the Court will consider it on the merits.

As noted above, a party that fails to timely disclose information required to be disclosed in an interrogatory response may not use that information at trial, unless the failure was "substantially justified" or "harmless." Fed. R. Civ. P. 37(c)(1). Having considered the parties' briefing, including Bio-Rad's amended interrogatory responses, and the arguments made at the hearing, the Court is satisfied that Bio-Rad adequately disclosed its lump sum royalty damages theory and the factual bases for that theory in its amended responses. As for the timing of those responses, Bio-Rad contends that it amended its interrogatory responses after receiving key deposition testimony late in the discovery period from ChromaCode's founder, Aditya Rajagopal, and Caltech's licensing executive, Fred Farina, regarding information pertinent to its lump sum

royalty rate theory. Dkt. No. 244 at 6. The record does not support a finding that the timing of these amendments was the product of bad faith. While Bio-Rad's amended responses were served on the last day of fact discovery, ChromaCode did not challenge the adequacy of the amended interrogatories or their timing when they were served[5] or seek any of the additional fact discovery it now says it needs to respond to this lump sum theory, although it had an opportunity to do so before serving its rebuttal expert report and Bio-Rad apparently was willing to agree to stipulate to discovery after the fact discovery deadline for this purpose. *See* Dkt. No. 244 at 16-17; Dkt. No. 269 at 49:10-51:10.

In these circumstances, the Court concludes that the timing of Bio-Rad's amended interrogatory responses was substantially justified. Even if the amended responses could have and should have been served earlier in the discovery period, the delay was harmless. The Court is not persuaded that ChromaCode's ability to prepare a rebuttal to Bio-Rad's lump sum royalty theory, including a rebuttal expert report, was prejudiced in any meaningful respect. *See, e.g.*, Dkt. No. 269 at 19:10-23:5, 49:10-51:10, 60:12-63:12, 64:17-65:3.

## IV. CONCLUSION

ChromaCode's motion to strike Mr. Bummer's expert report is denied.

**IT IS SO ORDERED.**

Dated: August 7, 2026

Virginia K. DeMarchi
Virginia K. DeMarchi
United States Magistrate Judge

[5] Apparently, both sides served amended interrogatory responses on the last day of fact discovery. *See* Dkt. No. 269 at 48:9-21.